IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39406

|  |  |  |
|---|---|---|
| CHARLES JAY DE GROOT and DE GROOT FARMS, LLC, | ) ) ) | |
|  | ) | Boise, January 2014 Term |
| Plaintiffs-Counterdefendants-Appellants, | ) ) | 2014 Opinion No. 39 |
|  | ) | |
| v. | ) | Filed: March 28, 2014 |
|  | ) | |
| STANDLEY TRENCHING, INC., d/b/a STANDLEY & CO., | ) ) | Stephen W. Kenyon, Clerk |
|  | ) | |
| Defendant-Counterclaimant-Respondent, | ) ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| J. HOULE & FILS, INC., a Canadian corporation, | ) ) | |
|  | ) | |
| Defendant-Respondent. | ) | |

_____

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

The decision of the district court is <u>affirmed</u>. Attorney's fees and costs on appeal are awarded to respondent.

Dinius & Associates, PLLC, Nampa, attorneys for appellants. Kevin E. Dinius argued.

Sasser & Inglis, PC, Boise, attorneys for respondent J. Houle & Fils, Inc. Clay M. Shockley argued.

Cantrill, Sullivan & King, Boise, attorneys for respondent Standley Trenching. Robert D. Lewis argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Appellant, Charles DeGroot and DeGroot Farms, LLC (collectively "DeGroot"), appeals the district court's entry of summary judgment on its claims against Standley Trenching, Inc. d/b/a Standley & Co. ("Standley"), relating to the construction and installation of a manure handling system at the DeGroot dairy. Beltman Construction, Inc., d/b/a Beltman Weldling and

Construction ("Beltman"), was the general contractor for the project. Beltman subcontracted with Standley for the installation of the manure handling equipment. J. Houle & Fils, Inc. ("Houle") manufactured the manure handling equipment installed at the DeGroot dairy. Because of maintenance problems with the manure handling equipment, DeGroot initiated litigation against Standley and Houle. DeGroot then initiated litigation against Beltman. Beltman brought a third party complaint against Standley. Standley counterclaimed against DeGroot for amounts due for parts and services. The district court granted Standley summary judgment on its counterclaim, granted Standley summary judgment on DeGroot's claims, and granted Standley summary judgment on Beltman's third party complaint. DeGroot appeals. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, DeGroot purchased a parcel of real property in Melba, Idaho, for the purpose of establishing a 2,000 cow dairy. In February 1999, Charles DeGroot spoke with Kurt Standley at a trade show in California regarding manure handling systems for dairies. Standley was in the business of constructing manure handling systems and expressed an interest in installing such a system at the new DeGroot dairy. After the trade show, Standley was provided the plans for the DeGroot dairy by Charles DeGroot. Those plans were developed by a different bidding contractor. DeGroot contracted with Beltman in approximately June, July, or August of 1999 to design and build a 2,500 cow dairy.

Beltman was the general contractor for the DeGroot dairy project. Standley prepared a bid for the project as a subcontractor. That bid included equipment obtained from Houle. DeGroot directed Beltman to utilize Houle parts for the manure flushing and drainage system in the dairy, and DeGroot directed Beltman to use Standley, who was the local dealer for Houle, for these parts. DeGroot concedes that it never entered into a contract with Standley and concedes that Standley's contract was with Beltman, not DeGroot. Other than Beltman's acceptance of Standley's bid, there was no written or oral communication between Beltman and Standley. Beginning in the summer of 1999 and continuing through April of 2000, Standley undertook the installation of the manure system. Standley was paid approximately $230,000 by Beltman for the design and installation of the equipment.

Neither Houle nor Standley provided any maintenance or materials to DeGroot during the installation of the equipment. DeGroot was informed by Standley that the manure handling system would function as intended and would all but run itself with little involvement by DeGroot. Following the completion of the DeGroot dairy in April of 2000, maintenance problems soon arose. The DeGroot dairy was running a pit mixture of sand and gravel instead of

compost for bedding in the stalls. When the manure was flushed out of the barn, the pit mixture of sand and gravel was also flushed, which interfered with the proper operation of the manure handling equipment. The lagoon pump was inadequate and needed modifications and upgrades. As a result, Idaho Power had to replace a transformer because the pump was blowing fuses. DeGroot incurred over $5,000 in electrical repairs to the pump and breaker box. DeGroot also expended over $16,000 to renovate the manure screening setup. There were also issues with the agitator pump.

DeGroot attempted to revoke or rescind acceptance of the equipment by a letter to Standley, and demand was made for return of approximately $119,000. DeGroot also made demand for $25,088. This amount reflected the alleged sum to fix the design problems that DeGroot suffered. During this time, when requested by DeGroot, Standley sent employees to DeGroot to provide maintenance and repair services. As of October 6, 2000, $13,317 was owed by DeGroot to Standley for Standley's maintenance services. It is undisputed that DeGroot owed this sum to Standley for maintenance services and that Charles DeGroot made assurances to Standley that this sum would be paid.

On December 21, 2001, DeGroot filed suit against Standley and Houle asserting claims for breach of contract, rescission, breach of the implied covenant of good faith and fair dealing, breach of implied UCC warranties, and violation of the Idaho Consumer Protection Act. Standley moved for summary judgment on each of DeGroot's claims, which the district court granted in its entirety on March 1, 2005. The district court ruled that DeGroot was not a third-party beneficiary of the contract between Standley and Beltman. DeGroot twice moved for reconsideration, both of which motions were denied by the district court. The district court also granted summary judgment to Standley on its counterclaim because there was no dispute that DeGroot agreed to pay on Standley's open account.

On March 2, 2005, DeGroot filed suit against Beltman. Beltman filed a third-party complaint against Standley and Houle on March 22, 2005, asserting causes of action for breach of contract, rescission, breach of the covenant of good faith and fair dealing, breach of implied UCC warranties, and violation of the Idaho Consumer Protection Act. In April of 2006, Beltman stipulated to judgment in favor of DeGroot in the amount of $964,255. Beltman then assigned to DeGroot any rights it possessed against Standley pursuant to the third-party complaint in satisfaction of the judgment. A satisfaction of judgment was registered in the case. Beltman never paid any money to DeGroot.

On March 26, 2011, Standley filed a motion for partial summary judgment. At hearing on that motion, Standley moved to expand the motion to include summary judgment on all claims based on the admission that Beltman had no independent damages. In a ruling from the bench, the district court granted Standley's motion for partial summary judgment with respect to the breach of express warranty and rescission claims. The district court denied Standley's motion for partial summary judgment with respect to Beltman's third-party claims of breach of the implied warranty of fitness for a particular purpose and breach of the covenant of good faith and fair dealing, Standley sought to expand its motion for partial summary judgment to a motion for complete summary judgment on the basis that Beltman failed to identify any independent damages. The district court, after further argument, granted Standley summary judgment as to all of Beltman's third-party claims because Beltman failed to identify any independent damages. Final Judgment was entered on November 8, 2011. The trial court awarded Standley attorney fees and costs on December 29, 2011. DeGroot filed a Notice of Appeal on November 16, 2011. Several amended notices of appeal were filed while the district court was considering attorney fees and costs below. A judgment awarding costs and attorney fees was entered on January 17, 2012, and DeGroot filed a Fourth Amended Notice on Appeal on January 23, 2012.

### III. ISSUES ON APPEAL

1. Whether the district court erred when it found that DeGroot was not a third-party beneficiary of the bid contract between Standley and Beltman.

2. Whether the district court erred when it granted summary judgment to Standley on its counterclaim and claim for attorney fees.

3. Whether the district court erred when it dismissed DeGroot's claims as an assignee of Beltman's claims against Standley.

4. Whether the district court erred when it awarded Standley attorney fees and costs below.

### IV. STANDARD OF REVIEW

An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment. Under Rule 56(c) of the Idaho Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. If the evidence reveals no disputed issues of material fact, then summary judgment should be granted. In making this determination, all disputed facts are liberally construed in favor of the non-moving party. Circumstantial evidence can create a genuine issue of material fact. Inferences that can reasonably be made from the record are made in favor of the non-moving party. However, the non-moving party may not rest on a mere scintilla of evidence. If the record raises neither a question of witness credibility

4

nor requires weighing the evidence, then summary judgment should be granted. The moving party is entitled to judgment when the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case.

*Parkwest Homes, LLC v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) (internal citations and quotations omitted).

## V. ANALYSIS

**A.    The district court did not err when it found that DeGroot was not a third-party beneficiary of the bid contract between Standley and Beltman.**

The district court ruled that DeGroot was not a third-party beneficiary of the bid contract between Standley and Beltman. The district court ruled that even though Standley knew the manure handling system was for DeGroot Dairy, there is no evidence in the contract that the intent of the bid contract was to benefit DeGroot.

DeGroot argues the district court erred when it found that it was not the intended third-party beneficiary of the bid contract between Standley and Beltman but only an incidental beneficiary. DeGroot asserts that there were sufficient factual disputes demonstrating that DeGroot was a third-party beneficiary. DeGroot argues that it was clear to Standley that the contract was for DeGroot's benefit because they met prior to submitting the bid. DeGroot maintains it was clear to Standley that the equipment would be used in the operation of the dairy. Finally, DeGroot maintains that there is no doubt that DeGroot would be paying for the manure handling equipment because Standley's invoices listed DeGroot as the customer, the bid contract named the project "DeGroot," and warranty information was sent directly to DeGroot.

Standley argues the district court properly found that DeGroot was not a third-party beneficiary. Standley argues that DeGroot acknowledges that it had no direct contractual relationship with Standley. Standley argues that it is inappropriate to examine the circumstances surrounding the bid contract because the bid contract is not ambiguous. Standley asserts that the bid contract outlines the job, materials, and costs in its bid to Beltman. Standley argues the single mention of DeGroot in the bid contract denotes the project name. There is nothing else in the contract, according to Standley, to indicate that DeGroot is an intended beneficiary.

Under Idaho law [I.C. § 29-102], if a party can demonstrate that a contract was made **expressly** for its benefit, it may enforce that contract, prior to rescission, as a third-party beneficiary. The test for determining a party's status as a third-party beneficiary capable of properly invoking the protection of I.C. § 29-102, is whether the agreement reflects an intent to benefit the third party. The third party must show that the contract was made primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary. Further, the **contract itself must express an intent to benefit the third party**. This intent

5

> must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered . . . a party must show that the contract was made for its **direct benefit**, and that it is not merely an indirect beneficiary.

*Idaho Power Co. v. Hulet*, 140 Idaho 110, 112–13, 90 P.3d 335, 337–38 (2004) (internal citations and quotations omitted) (emphasis added). A party is not a third-party beneficiary of subsequent contracts a contractor enters with others so as to satisfy its own obligations. *Nelson v. Anderson Lumber Company*, 140 Idaho 702, 709, 99 P.3d 1092, 1099 (Ct. App. 2004) (citing 9 Corbin on Contracts § 779D (1979); Restatement (Second) of Contracts § 302, ills. 19 (1981)). The mere mention of a third party in a contract does not render that party a third-party beneficiary absent a showing that the contract was made for that party's direct benefit. *See Blickenstaff v. Clegg*, 140 Idaho 572, 579, 97 P.3d 439, 446 (2004).

DeGroot is not a third-party beneficiary of the bid contract. Idaho case law is clear that the party claiming to be a third-party beneficiary must show that the contract expressly indicates that it was made for his or her direct benefit. Here, the contract does not clearly demonstrate an intent expressly to benefit DeGroot. DeGroot argues that evidence surrounding the adoption of the bid contract "implies" an intent to benefit DeGroot. However, DeGroot has failed to raise an argument that the bid contract itself is sufficiently ambiguous to the extent that it would be appropriate to examine such surrounding circumstances. Therefore, this Court looks at the face of the bid contract. The bid contract is named "DeGroot." The single appearance of "DeGroot" in the bid contract does not reflect an express intent to benefit DeGroot; rather, it merely reflects where the work is to be done. There is no other language in the contract reflecting an intent to benefit DeGroot.

The bid contract in the current case has significantly less language indicating an intent to benefit DeGroot than the contract in *Blickenstaff*. In that case, the parties to a finance agreement agreed to obtain financing to timely pay off M & D's interest in the disputed property. 140 Idaho at 579, 97 P.3d at 446. This Court ruled that the agreement was not for M & D's benefit because the agreement does not guarantee the contracting parties would obtain financing to pay off M & D. *Id.* The language in the present matter falls substantially short of the intent expressed in the contract in *Blickenstaff*.

The parties argue over the applicability of *Nelson*. In *Nelson*, homeowners brought an action against their contractor for a cabin they intended to construct on certain property. *Id.* at 705, 99 P.3d at 1095. The homeowners' contractor subcontracted for materials from several subcontractors. The contractor entered into an oral contract with a subcontractor, and the

6

homeowners asserted that they were a third party beneficiary of that oral contract. *Id.* at 709, 99 P.3d at 1099. The Idaho Court of Appeals held that the benefit that the homeowners received from the subcontractor was merely incidental and not direct. *Id.* The contract between the homeowners and the contractor gave the homeowners the right to a certain building, which included materials. *Id.* The subsequent contracts that the contractor entered into added nothing to the entitlement received by the homeowners from their agreement with the contractor: regardless of where the contractor received its materials, the homeowners were entitled to a certain building with certain materials. *Id.* The subsequent contracts into which the contractor entered were merely so the contractor could satisfy its own obligations. The homeowners had a cause of action against the contractor if it failed to perform but not the subcontractors. *Id.*

The *Nelson* case further supports the position that DeGroot was not a third-party beneficiary of the bid contract. This case is analogous to *Nelson* because here DeGroot contracted with Beltman for the construction of the dairy. The agreement between DeGroot and Beltman gave DeGroot the right to a certain dairy, which included the Houle manure handling equipment that DeGroot desired. Beltman accepted Standley's subsequent bid contract. That contract was for Beltman's benefit so it could satisfy its obligations to DeGroot. DeGroot argues that this case is distinguishable from *Nelson* because DeGroot spoke directly with Standley, Standley was aware the project was for DeGroot, and DeGroot directed Beltman to accept Standley's bid. In *Nelson*, however, the subcontractor was clearly aware that it was contributing to a residence. The subcontractor in *Nelson* was also aware of the third party's existence because it delivered its services to the residence being built. Additionally, *Nelson* supports the proposition that the mere reference to the DeGroot dairy as the location for the manure handling system is insufficient to convey third-party beneficiary status because it merely indicates where the subcontracting work was to be performed. In *Nelson*, the subcontractor likewise performed its work at the home being constructed.

Therefore, DeGroot is not a third-party beneficiary of the contract between Standley and Beltman. The issues relating to the district court's grant of summary judgment in favor of Standley on DeGroot's claims for warranty, breach of the covenant of good faith and fair dealing, violation of the Idaho Consumer Protection Act, and rescission of contract are meritless because DeGroot had no contract with Standley.

B.     **The district court did not err when it granted Standley summary judgment on its counterclaim against DeGroot.**

7

The district court granted Standley summary judgment on its counterclaim against DeGroot, holding that it is undisputed that there is an open account with a balance of $20,259, which DeGroot had agreed to pay.

DeGroot argues that the district court erred in granting Standley summary judgment on Standley's counterclaim because DeGroot pleaded affirmative defenses to the contract. DeGroot also maintains that it is disingenuous for the district court to rule that there is no contract between DeGroot and Standley such that DeGroot cannot collect but that there is a contract between DeGroot and Standley such that Standley can collect.

Standley argues that DeGroot fails to recognize that Standley's counterclaim is for a transaction separate and apart from the bid contract. Standley maintains that its counterclaim was brought on a transaction to service and conduct work on the manure handling equipment after it was installed. Further, Standley asserts that DeGroot agreed to pay Standley for these services and that DeGroot has an open account with Standley.

An open account is "simply an account with a balance which has not been ascertained." *Franklin Bldg. Supply Co. v. Sumpter*, 139 Idaho 846, 851, 87 P.3d 955, 960 (2004) (quoting *Kugler v. Nw. Aviation, Inc.*, 108 Idaho 884, 887, 702 P.2d 922, 925 (Ct. App. 1985)) ; *see also M.T. Deaton & Co. v. Leibrock*, 114 Idaho 614, 616, 759 P.2d 905, 907 (Ct. App. 1988) ("It is an account where the balance might be subject to adjustment due to the respective demands of the parties.") An open account action requires proof of services rendered, and a showing that the amounts charged were reasonable. *Leibrock*, 114 Idaho at 616, 759 P.2d at 907. A written account may become an account stated through acquiescence in its correctness. *Id.*; *O'Harrow v. Salmon River Uranium Dev., Inc.*, 84 Idaho 427, 431, 373 P.2d 336, 339 (1962). An account stated is an account in which the balance has been mutually agreed to by the parties. *Argonaut Ins. Cos. v. Tri-West Const. Co.*, 107 Idaho 643, 646 691 P.2d 1258, 1261 (Ct. App. 1984). Both open account and account stated theories are methods of proving amounts owed. *Leibrock*, 114 Idaho at 616, 759 P.2d at 907. A mere pleading allegation is not sufficient to create a genuine issue of material fact against affidavits and other evidentiary materials. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969).

Here, after the manure handling equipment was installed at the dairy, it worked as expected for a short period of time. After installation, however, DeGroot began to experience issues with the equipment. DeGroot requested that Standley service the manure handling equipment. DeGroot requested both parts and services from Standley between May 26, 2000, and April 6, 2001. Charles DeGroot conceded that he agreed to pay for the parts and service. Charles

8

DeGroot also conceded that the amount owed to Standley was $20,259. There is, therefore, no dispute that a relationship existed between DeGroot and Standley after the bid contract was complete, whereby Standley would service the manure equipment. There is no dispute that DeGroot agreed to pay $20,259 to Standley. And there is no dispute that DeGroot failed to pay that amount. Additionally, DeGroot did not raise specific facts negating this evidence or supporting its affirmative defenses. Therefore, the district court did not err when it granted Standley summary judgment on its counterclaim against DeGroot.

**C.    The district court did not err when it granted Standley summary judgment on DeGroot's claims against Standley as assignee of Beltman.**

Following DeGroot's failed claims directly against Standley, DeGroot sued Beltman and settled that litigation. As part of that settlement, Beltman took an assignment of Beltman's claims against Standley. Beltman stipulated to judgment in favor of DeGroot in the amount of $964,255. However, Beltman never paid any of this amount to DeGroot and DeGroot gave Beltman a Satisfaction of Judgment. DeGroot attempts to use the Beltman assignment to resurrect its failed claims against Standley.

After determining that DeGroot adequately pleaded indemnity, the district court ultimately dismissed all of its claims against Standley as the assignee of Beltman because Beltman had no damages of its own caused by Standley. The district court ruled that Beltman's assignment to DeGroot of Beltman's claims against Standley permits DeGroot to pursue the causes of action Beltman possessed, but since Beltman suffered no damages caused by Standley, and paid nothing to DeGroot for any damages caused by Standley, Beltman has no claims to assign.

DeGroot argues the district court erred in granting summary judgment to Standley because Beltman's damages arise through DeGroot. DeGroot argues that I.R.C.P. 14 permits a third-party to assert claims with damages that are derivative of a main action. DeGroot also maintains that it is irrelevant that Beltman never paid any money to DeGroot because Beltman can claim damages that DeGroot suffered even though it never paid any money to DeGroot for those damages.

Standley argues that the district court properly granted it summary judgment on all of its claims because Beltman failed to allege any damages separate or in excess of DeGroot's own damages. Standley argues that DeGroot is using the Beltman assignment to seek compensation for its own damages, not Beltman's damages. Standley maintains this is improper. Also,

9

Standley argues that because the judgment was satisfied without Beltman paying any money, the claim for indemnification must fail.

The district court ruled that DeGroot sufficiently pleaded indemnity in its third-party complaint. The district court ruled that even though DeGroot adequately pleaded indemnity, it failed to make an adequate showing of indemnity. Specifically, the district court noted that DeGroot failed to establish actual liability because Beltman never paid, nor will it ever be required to pay, any money to DeGroot. The district court also ruled that DeGroot cannot demonstrate that the settlement between it and Beltman was reasonable because there was no determination by anyone that Beltman was liable.

The district court did not err in granting Standley summary judgment on these claims. Beltman's third-party claim only gives DeGroot a right to prosecute whatever claims Beltman possessed against Standley. DeGroot failed to establish a claim for indemnity. DeGroot failed to offer any evidence demonstrating any harm, or damages that Beltman suffered distinct from the damages of DeGroot, which Beltman never paid. DeGroot argues that Beltman can claim DeGroot's damages as its damages, but this fails to recognize that Beltman has not paid anything to DeGroot and has not suffered any damages of its own. The assignment of Beltman's claims was merely a fictitious arrangement to resurrect DeGroot's claims that were already dismissed. Standing in Beltman's place, DeGroot fails to establish a case for indemnity, fails to demonstrate any damages Beltman paid to DeGroot, and fails even to allege that Beltman suffered any of its own harm; rather, DeGroot concedes Beltman has no independent damages. Beltman failed to pay anything to DeGroot but received a satisfaction of judgment. Beltman, therefore, raised no evidence of any damages it suffered whatsoever. Because there were no damages, Beltman had nothing to assign to DeGroot and the assignment is meaningless with respect to DeGroot's ability to pursue these claims. Thus, the district court properly dismissed DeGroot's third-party claims. DeGroot failed to raise a scintilla of evidence demonstrating any damages on the part of Beltman.

1.      *The district court did not err when it granted Standley summary judgment on DeGroot's third-party claim for rescission.*

The district court granted Standley summary judgment on DeGroot's third-party rescission claim. The district court ruled that Beltman did not revoke acceptance of the goods within a reasonable time. The district court noted that a couple years would be a reasonable time for revocation but Beltman waited nearly five years to revoke acceptance of the goods, which is not reasonable.

10

DeGroot argues that the district court erred in granting summary judgment to Standley on the rescission claim because the doctrine of laches does not apply. DeGroot argues that laches[1] does not apply because Standley knew in 2001 that DeGroot was not happy with the manure handling equipment and it was sued three months later, which included a claim for rescission. Beltman sought rescission when it sued Standley in 2005 immediately after the DeGroot's causes of action against Standley were dismissed. Thus, DeGroot argues it did not sleep on its rights.

Standley argues that Beltman did not seek rescission of the manure handling equipment within a reasonable time after the defect was discovered. Standley argues that DeGroot errs in looking at the notice of rescission given by DeGroot not Beltman. Standley notes that Beltman's notice of rescission was made when it filed its third-party complaint five years after the completion of the dairy.

Idaho Code § 28-2-608(2) requires revocation of acceptance of commercial goods to occur "within a reasonable time after the buyer discovers or should have discovered the ground for it . . . ." A buyer rejects non-conforming goods by taking affirmative action to avoid acceptance and by notifying the seller of the rejection within a reasonable time. I.C. § 28-2-608. Whether a buyer has revoked acceptance within a reasonable time is a question of fact for the trier of fact. 67 Am. Jur. 2d, *Sales* § 1070 (2013). This question should be resolved based on a consideration of the totality of the circumstances. *Id.* Where the conclusion is inescapable that the buyer waited too long, the court may bar revocation as a matter of law. *Id.*

It is undisputed that the dairy was completed in 2000 and within several months of the completion of the dairy the manure handling equipment began experiencing difficulties. It is undisputed that DeGroot sued Standley in 2001 and included a claim for rescission. It is possible this notice of rescission was timely given the complexity of the equipment, the limited experience and knowledge of DeGroot, and the difficulty of discovering the defect before this time. *See* 67 Am. Jur. 2d, *Sales* § 1070 (2013). However, DeGroot's rescission claim was dismissed because DeGroot was not in privity of contract with Standley. Also, DeGroot was not the "buyer" of the equipment under I.C. § 28-2-608(2). On DeGroot's third party claim as an assignee of Beltman, DeGroot stands in the place of Beltman to assert Beltman's claims. Therefore, DeGroot must assert Beltman's claims for rescission, not its own failed claim for rescission. Here, Beltman gave Standley notification of revocation when it filed its lawsuit in 2005. This notice was five years after problems with the equipment arose, four years after the

---

[1] It is unclear how the doctrine to laches applies to this appeal. The district court did not base its decision on the doctrine of laches, but it merely ruled that Beltman failed to satisfy an element of rescission: reasonable notice.

need for revocation became apparent, and four years after DeGroot sought rescission. It is therefore inescapable that Beltman's claim for rescission was not brought within a reasonable time. Thus, the district court did not err when it granted Standley summary judgment on DeGroot's third party complaint for rescission.

**D.    The district court did not err when it granted Standley attorney fees and costs below pursuant to I.C. § 12-120(3).**

DeGroot argues the district court erred when it granted Standley attorney fees and costs below because the district court ruled there is no contractual privity between DeGroot and Standley, so it is "patently unfair" to assess fees under I.C. § 12-120(3). Standley argues the district court properly awarded it attorney fees and costs below because costs can be assessed under I.C. § 12-120(3) absent a contract because the litigation was brought on a commercial transaction.

Idaho Code Section 12-120(3) provides for attorney fees to the prevailing party in a civil action to recover on "any commercial transaction." Commercial transactions are all transactions except for personal or household purposes. I.C. § 12-120(3). Whether there is a commercial transaction is a question of law over which this Court exercises free review. *See Great Plains Equip. v. Northwest Pipeline Corp.*, 136 Idaho 466, 470, 36 P.3d 218, 222 (2001). "Where a party alleges the existence of a contractual relationship of a type embraced by section 12-120(3) . . . that claim triggers the application of [I.C. § 12-120(3)] and a prevailing party may recover fees even though no liability under a contract was established." *Farmers Nat. Bank v. Shirey*, 126 Idaho 63, 73, 878 P.2d 762, 772 (1994). "This same principle applies where the action is one to recover in a commercial transaction, regardless of the proof that the commercial transaction alleged did, in fact, occur." *Magic Lantern Prod. v. Dolsot*, 126 Idaho 805, 808, 892 P.2d 480, 483 (1995). Idaho courts will consider whether the parties alleged the application of I.C. § 12-120. *See Fritts v. Liddle & Moeller Const.*, 144 Idaho 171, 174–75, 158 P.3d 947, 950–51 (2007) ("[both parties] in their answer and counterclaim . . . clearly allege that I.C. § 12-120 applies."); *Cannon Builders, Inc. v. Rice*, 126 Idaho 616, 624, 888 P.2d 790, 798 (Ct. App. 1995) ("the nature of the suit, which includes a claim that Crooks was entitled to enforce the Rice-Cannon contract as a third-party beneficiary, was sufficiently based on a commercial transaction . . . .").

DeGroot argued it was a third-party beneficiary to a commercial transaction and alleged Standley breached a contract, express warranties and implied warranties. This is a commercial transaction. This Court has made clear that the failure of a party's claims based on a commercial

transaction does not absolve a party of the attorney fees and costs that would be awarded under I.C. § 12-120(3). DeGroot tried to recover on a commercial transaction. It also sought to assert that it was a third party beneficiary of the commercial agreement between Standley and Beltman. Thus, the district court did not err in awarding fees below.

**E.      Standley is entitled to attorney fees on appeal.**

Both DeGroot and Standley request attorney fees on appeal pursuant to I.C. § 12-120(3) and I.A.R. 41. Idaho Code Section 12-120(3) provides for attorney fees to the prevailing party in a civil action to recover on "any commercial transaction." Commercial transactions are all transactions except for personal or household purposes. I.C. § 12-120(3). DeGroot has argued numerous claims of a commercial nature. Additionally, DeGroot seeks attorney fees on the basis of a commercial transaction. Standley, as the prevailing party, is entitled to attorney fees on appeal.

## VI. CONCLUSION

The district court's decision is affirmed in its entirety. Attorney fees and costs on appeal are awarded to Standley as the prevailing party.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.